UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

YOLANDA MILLER,                                         Case No.: 1:12-cv-23717

    Plaintiff,

v.

GHD ENTERPRISE CORP.,

HILDA M. DIAZ, individually,                            Date: October 12, 2012

    Defendants.

## COMPLAINT

Plaintiff, YOLANDA MILLER brings this action against her former employer, GHD ENTERPRISES CORP. and HILDA M. DIAZ for failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* and the Florida Private Sector Whistle-blower's Act, Fla. Stat. § 448.102.  In support of these claims, she states the following:

### INTRODUCTION

1. This is an action involves overtime claims pursuant to the Fair Labor and Standards Act, 29 U.S.C. § 201, *et. seq.* (the "FLSA") and retaliatory discharge in violation of the Florida Private Sector Whistle-blower's Act, Fla. Stat. § 448.102 and is brought by Plaintiff, YOLANDA MILLER ("Ms. Miller" or "Plaintiff"), as a former employee of GHD ENTERPRISES CORP. ("GHD") and HILDA M. DIAZ ("Diaz") (collectively known as "Defendants").

## PARTIES

2. Ms. Miller, Plaintiff, was, at all relevant times to this action, a resident of Cutler Bay, Florida. At all times relevant to this action, the Defendant employed her as an office worker in its Hialeah, Florida office.

3. Defendant, GHD ENTERPRISE CORP., is a for-profit corporation organized under the laws of Florida and has its principal address listed as 3414 West 84th Street, Suite D-106, Hialeah Gardens, FL 33018. Defendant's Registered Agent is HILDA M. DIAZ, the co-defendant, listed at the same addressed stated *supra*. Defendants are in the business of selling dietary and nutritional supplements throughout the country and Puerto Rico. Defendants also have numerous employees located in the South American country of Colombia.

4. At all relevant times to this action, Diaz employed Plaintiff within the meaning of 29 U.S.C. § 203(g). Diaz is an officer, manager, and/or owner of the Defendant Corporation and is the Plaintiff's supervisor, thus making Diaz an employer within the meaning of the FLSA. See *In re Van Diepen, P.A.*, 236 Fed. Appx. 498 (11th Cir. 2007).

5. During the times relevant to this Complaint, Defendants have employed more than two employees and generated more than $500,000 in revenues for the years of 2010, 2011, and 2012. Defendants are in the business of selling dietary and nutritional supplements throughout the country and Puerto Rico. Therefore, Defendant and Plaintiff engaged in interstate commerce.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

6. Defendants qualify for and are subject to both traditional and enterprise coverage under the FLSA for all the relevant time periods contained in this Complaint. Said differently, Defendants are subject to the Fair Labor Standards Act.

7. At all relevant times Defendants have been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

8. Defendants employed Plaintiff as an employee within the meaning of FLSA § 203 and Fla. Stat. § 448.101.

9. At all relevant times Defendants has employed ten or more.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter under its federal question jurisdiction because it arises from federal law, specifically, the FLSA and the Defendants' willful misclassification of Plaintiff's employment status under federal tax laws.  The Court also has supplemental jurisdiction over the Florida state law claim pursuant to 28 U.S.C. § 1367 because this state law claim is significantly related to the claims arising from Federal law, as it arises from the same set of operative facts.  Further, the state Whistle-blower claim does not raise complex or novel questions of state law and does not predominate over the Federal claims.

11. This Court has personal jurisdiction over as the GHD is a corporation organized under the laws of Florida and conducts business within Florida, and Diaz is a resident of Florida and conducts business in Florida.

12. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in this district, specifically, Miami-Dade County.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

## GENERAL ALLEGATIONS COMMON TO PLAINTIFF'S FLSA CLAIM

13. Plaintiff began her employment as an office worker with Defendants in January 2010. She worked for Defendants until July 15, 2010, and then returned for approximately one month in November of 2010. In October 2011, Defendants rehired Plaintiff for the same office position and Plaintiff held this position until her termination on September 24, 2012. During these relevant times, Plaintiff was an employee within the definition the FLSA § 203.

14. The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. S 207(a)(1). The FLSA exempts certain employees from the overtime requirements. However, an "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *See Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).

15. Pursuant to the FLSA, the test for the executive exemption (which is nearly identical to the administrative exemption) requires that an employee's main, principal and "primary duty" consists of the "management of the enterprise" in which he or she is employed. In addition, the executive employee's work must include "the customary and regular direction" of work of two or more employees, including the hiring and firing processes and "customarily and regularly exercises discretionary powers." The regulations define an exempt administrative employee as one whose "primary duty" consists of "office or non-manual work." A high degree of discretion and independence is also required by the employee for a successful classification under the executive and administrative exemptions.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

16. In order for any such exemption to apply, one of the requirements is that the employer pay the employee a salary, rather than on an hourly basis.

17. Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

18. Plaintiff, as an office worker who was paid hourly throughout her entire time working with Defendants, does not fall within any exemption under the FLSA. Thus, Defendants owed Plaintiff overtime at a rate no less than time and a half for all hours she worked over forty (40) in any given workweek.

19. During Plaintiff's employment with Defendants, Defendants forced her to work over forty (40) hours per week on a consistent basis at various times.

20. Evidence reflecting the precise number of overtime hours worked by Plaintiff, as well as the applicable compensation rates, is in the possession of Defendants. If these records are unavailable, Plaintiff may establish the hours she worked solely by her testimony, and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

21. Defendants did not compensate Plaintiff whatsoever for any and all hours she worked over forty (40) hours per workweek during her employment with Defendant.

22. Defendants have not inquired with private legal counsel or the DOL seeking to affirm that its pay practices were in compliance as legal counsel or the DOL would have clearly advised Defendants as to regulations and statues cited above and that the Plaintiff must be paid overtime for those hours worked in excess of 40 in a workweek.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

23. Accordingly, Plaintiff is entitled to recover all portions of overtime pay due from overtime hours worked for which time and a half compensation was not paid, liquidated damages, and attorneys' fees under the FLSA's three year statute of limitations.

24. Defendants employed the Plaintiff within the meaning of 29 U.S.C. § 203(e)(1).

## COUNT 1
## Unpaid Overtime Pursuant to the FLSA
## 29 U.S.C. § 207
## (As to Defendants)

25. Plaintiff re-alleges paragraphs 1-24 as if fully set forth in this Count.

26. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.  Defendants are subject to enterprise coverage under the FLSA because they employ two or more employees and generate in excess of $500,000 in the relevant years this action concerns, but even it was not, traditional coverage would apply in this case because Defendants, with and through the work of the Plaintiff placed, shipped, and sold, dietary supplements into interstate commerce.

27. Plaintiff was not an exempt employee of Defendants because they paid her on an hourly basis throughout her employment.

28. Plaintiff worked in excess of forty (40) hours per workweek on a consistent basis at various times throughout her employment with Defendants and did not receive time and a half compensation for this time.

29. Defendants intentionally and willfully forced Plaintiff to work overtime and refused to pay her overtime compensation.  Defendants violated the FLSA by not

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

      failing to pay time and a half compensation for all hours Plaintiff worked over forty (40) in a given work week.

30. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

31. Due to Defendants' FLSA violations, Plaintiff suffered damages, and is entitled to recover from Defendants the unpaid overtime compensation, and an additional amount equal as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

## GENERAL ALLEGATIONS COMMON TO PLAINTIFF'S WHISTLE-BLOWER CLAIM

32. Plaintiff began her employment as an office worker with GHD in January 2010. She worked for GHD until July 15, 2010, and then returned for approximately one month in November of 2010. In October 2011, GHD rehired Plaintiff for the same office position and Plaintiff held this position until her termination on September 24, 2012.

33. GHD hired Plaintiff as an employee who would work in its office, and Plaintiff filled out all appropriate tax forms indicating that she was an employee of GHD. For example, Plaintiff filled out a W-4 IRS tax form and listed two dependents when she returned to work for GHD in 2011.

34. GHD refused to provide Plaintiff with the appropriate tax forms she required for both 2010 and 2011 in order for her to complete her personal income taxes.

35. Plaintiff objected to this unlawful behavior and demanded that GHD provide her with her W-2 forms so that she could timely file her tax returns. GHD failed in both years to provide the appropriate tax forms.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

36. GHD only recently sent Plaintiff an IRS 1099 form for 2011 and a W-2/1099 form from the year 2010 a few weeks prior to her termination on September 24, 2012.

37. The IRS 1099 form is used to report miscellaneous income, and is often used to report payments made to independent contractors.  However, at all relevant times, Plaintiff was an employee of GHD, as evidenced by their employment relationship, the fact that Plaintiff was hired as an employee, and the fact that Plaintiff submitted a valid W-4 to GHD, and that GHD itself sent Plaintiff a W-2 form for the year 2010.  Further, Plaintiff was required to strictly adhere to the job demands of her employer.

38. In an attempt to get the GHD to comply with the law, Plaintiff threatened to blow the whistle on GHD by communicating with the IRS about the misclassification that needs correcting and did indeed communicate with the IRS in order to bring GHD's unlawful actions into legal compliance.

39. At the end of July and/or the beginning of August 2011, Plaintiff began to specifically ask GHD for her pay stubs and appropriate tax forms in order to provide this information to the IRS.

40. When GHD learned during this time that Plaintiff was asking for these forms for the purposes of sending them to the IRS, GHD began to lower her employment hours from 40 or more hours per week to 35 hours per week.  Exhibit 1 consists of the change in hours she suffered during this time as a result of Defendant's knowledge that she was investigating this topic and then communicating with the IRS.  *Compare* Ex. 1 at 1 (hours before communication)*, with* Ex. 2 at 2 (hours as of September 1, 2012).  Furthermore, Plaintiff began to experience a hostile work

environment caused by GHD's upper management after this time, which consisted of harassment and public yelling at her.

41. Throughout the following weeks, Plaintiff constantly objected to GHD's unlawful tax classification and refusal to provide the proper tax information and told her employer she needed these important documents for her investigation with the IRS and Department of Labor.

42. On or around September 10, 2012, Plaintiff again approached GHD's registered agent, Diaz, in person to request the documents. Although Diaz already knew the purposes of Plaintiff's request for these documents, Plaintiff specifically told her in person that she was reporting Defendant and its tax practices to both the IRS and the Department of Labor ("DOL"). In a dismissive tone, Diaz told her something to the effect of "good luck with that" and again refused to provide her with any of the requested documents. Diaz was sending a clear message that neither her, the DOL, the IRS or anyone was going to touch her.

43. On September 24, 2012, and 14 days from her objections and refusal to participate in Diaz and her company's unlawful behavior (and upon returning from a week off of work for medical reasons), Plaintiff returned to GHD's office where Diaz had given away her desk to another employee, and had informed her that it was demoting her to the sales department. When Plaintiff informed Diaz that she was originally hired as an office worker, Diaz publicly terminated her.

44. There is no coincidence that GHD terminated Plaintiff less than two (2) weeks after she expressly told her that she was reporting GHD to both the IRS and DOL and demanded (again) her tax documents and tax classification to be fixed. GHD

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

gave no other justification for the demotion and public termination at the time of the termination.

45. GHD's bad faith actions are also evidenced by its failure to provide accurate information.  For example, just prior to Plaintiff's termination Defendant finally sent her an inaccurate W-2 tax form for the year of 2010 and an inaccurate 1099 tax form for the year 2011.

46. The documents provided by Defendant are intentionally inaccurate.  The 2010 W-2 and attached 1099 forms are inaccurate, as explained in Plaintiff's 2010 amended income tax return correction (filed September 19, 2012) attached as <u>Exhibit 2</u>, because the documents should show $6668.00 as income.  <u>Ex.</u> 2 at 1.  The 2011 1099 form is also inaccurate, as also explained in Plaintiffs 2011 amended income tax return (filed September 19, 2012) attached as <u>Exhibit 2</u>.  <u>Ex. 2</u> at 2.

47. GHD terminated Plaintiff due to Plaintiff's communication that she objected to and refused to participate in his unlawful tax evasion schemes (undoubtedly trying to avoid payroll and other employer taxes) and because she threatened and indeed was reporting GHD to both the IRS and the DOL for their illegal tax practices.

48. After the wrongful termination, Plaintiff discovered that she was not eligible for unemployment benefits because GHD never paid any unemployment requirements.  Plaintiff's rejection letter from the Department of Economic Opportunity is attached as <u>Exhibit 3</u> and shows that she has "insufficient wage credits," despite working for Defendant for almost one continuous year.  These insufficient wage credits arise from the fact that GHD willfully misclassified

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

Plaintiff and did withhold and/or pay the appropriate monies in order to comply with federal and state requirements.

49. Plaintiff has continued her investigation with the IRS regarding GHD's misclassification of her employment status.

50. Through her subsequent investigation of GHD's actions against her, Plaintiff has also discovered evidence of significant tax evasion that is consistent with GHD's motive in terminating her for threatening to report GHD to the IRS and the DOL. Specifically, Plaintiff discovered at least one forgery in regarding her pay checks from GHD. This evidence is attached as Exhibit 4 and discussed *infra*:

   a. Ex. 4 at 1 shows the records that JP Finance keeps for every check cashed. JP Finance is a check cashing establishment where Plaintiff cashed most, if not all, of her checks. These records show a screen shot of the individual cashing a check, and also includes photocopies of both sides of the cashed check.

   b. Ex. 4 at 1 and 2 is an example of a validly cashed check by Plaintiff. Not only does it include her picture, but importantly, her signature is distinct and consistent. *Compare* Ex. 4 at 1, *with* Ex. 4 at 2 (two checked cashed by Plaintiff).

   c. However, Ex. 4 at 3 shows a fraudulent transaction that Plaintiff has no memory of whatsoever. Not only is there no individual in the screenshot (and the camera is turned on), but more importantly, the signature is much different. Most noticeable is the lack of two "L's" in the last name that is a staple of Plaintiff's genuine signature. *Compare* Ex. 4 at 3, *with* Ex. 4 at 1, 2.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

    d. In addition, the forged check is also different in that the memo line contains the word "Gracias," rather than a breakdown of any purported withholding. *Compare* <u>Ex. 4</u> at 3, *with* <u>Ex. 4</u> at 1, 2.

51. Diaz and/or the management or ownership of GHD use JP Finance on a consistent basis for business.

## COUNT 2
## Wrongful Termination in Violation of the
## Florida Private Whistle-blower Act
## Fla. Stat. § 448.102

52. Plaintiff re-alleges paragraphs 1-12 and 32-51 as if fully set forth in this Count.

53. At all relevant times, GHD employed ten (10) or more employees.

54. GHD employed Plaintiff as an office worker and exerted control and direction of her as an employee.

55. Plaintiff expressly told GHD, through its registered agent and President, that she was going to report GHD to the IRS and DOL for violations of various tax laws.

56. GHD committed a retaliatory personnel action against Plaintiff because in retaliation for, and as a direct result of Plaintiff's objections, refusal to participate and express intention to report GHD's wrongdoing, GHD first demoted Plaintiff and almost simultaneously publically terminated her.

57. GHD's unlawful conduct has caused, and continues to cause, and will cause Plaintiff to suffer substantial damages and is in violation of Fla. Stat. 448.102(3).

### REQUEST FOR RELIEF

58. WHEREFORE, Plaintiff prays the following relief as to Count 1:

    a. That the Court find Defendants willfully violated the overtime compensation provision of the FLSA and in bad faith;

    b. That the Court award overtime compensation owed to Plaintiff for all hours worked over forty (40) for which she did not receive compensation for at a rate not less than time and a half, in an given workweek within the last three years, AND liquidated damages of an equal amount of the owed overtime compensation; in addition to penalties and interest on said award pursuant to § 216 of the FLSA; and

    c. That the Court award attorneys' fees and costs pursuant to § 216 of the FLSA.

59. WHEREFORE, Plaintiff prays the following relief as to Counts 2:

    a. That the Court award her economic damages against GHD, to the fullest extent of Fla. Stat. § 448.103 allows, including but not limited to, back pay, front pay, loss of employment benefits from the date of her termination from GHD, plus interest as allowed by law in full;

    b. Compensatory damages in an amount to be determined in this matter as allowable under Fla. Stat. § 448.103;

    c. Reasonable attorneys' fees, including litigation expenses, and costs, as allowed under Fla. Stat. § 448.103

    d. Such and other further relief as the Court deems just and proper to allow Plaintiff to re-file and/or correct the previous erroneous tax returns filed to the IRS directly due to GHD's actions; and

    e. Such and other further relief as the Court deems just and proper.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated this 12th day of October, and respectfully submitted by:

_____
Dale James Morgado, Esquire
FELDMAN MORGADO, PA
100 North Biscayne Boulevard,
29th Floor, Suite 2902
Miami, Florida 33132
305-222-7850 Telephone
305-384-4676 Facsimile
E:dmorgado@ffmlawgroup.com

Attorney for the Plaintiff